TOM TOTH, SR., d/b/a Toth Automotive, Plaintiff-Appellant, v. JOHN MANSELL, d/b/a John's Truck Repair, Defendant-Appellee.

First District (6th Division)   No. 1—90—0426

Opinion filed December 14, 1990.—Modified on denial of rehearing February 15, 1991.

W. Lee Newell, Jr., of Calumet City, and Jack W. Lund, of Gary, Indiana, for appellant.

John P. Brattoli, of Chicago Heights, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

This appeal by plaintiff arises from an action filed to recover amounts allegedly owed plaintiff by defendant for automobile and truck supplies purchased by defendant on open account. The trial court dismissed the action against defendant, holding that the statute of limitations barred recovery. .

Plaintiff, Tom Toth, doing business as Toth Automotive, sells automobile and truck supplies and equipment. Defendant, John Mansell, doing business as John's Truck Repair, established an open account with plaintiff on March 3, 1977, by making his first charge purchase. From March 3, 1977, until April 17, 1978, defendant charged $9,915 on the account. By April 17, 1978, defendant paid off the entire balance due. From April 17, 1978, until January 7, 1980, defendant purchased $17,700 in supplies from plaintiff. During this period, defendant paid $10,900 on the account. Defendant last purchased goods from plaintiff on January 7, 1980. Defendant last made a payment on August 1, 1980.

From November 17, 1979, when the net balance was $6,816.05, until May 20, 1988, the date this suit was filed, plaintiff added a service charge at the rate of 1½% per month pursuant to the terms set forth on the monthly account statements. As of September 30, 1987, defendant allegedly owed plaintiff $32,434.43. Plaintiff's first amended complaint prayed for this sum plus service charges at the rate of 1½% per month from September 30, 1987, to date of judgment. Plaintiff attached to the complaint 120 pages, consisting of copies of invoices, statements of account and ledgers. Plaintiff alleged that defendant himself signed for 18 of the 25 attached invoices. Plaintiff also alleged that he sent defendant monthly statements showing the net balance due after adjusting for all new invoices, service charges and payments.

Defendant admitted purchasing goods from plaintiff prior to 1981 on open account pursuant to an oral agreement. Defendant denied agreeing to pay the monthly service charge on the balance due, and neither admitted nor denied receiving monthly statements. Both parties agree that defendant never contacted plaintiff either orally or in writing to contest or object to the bills.

On May 20, 1988, plaintiff brought the action against defendant for amounts allegedly owed on "open account." The trial court granted defendant's motion to dismiss on February 3, 1989, based on the applicable five-year statute of limitations for oral contract actions and granted plaintiff leave to file an amended complaint. In his amended complaint, filed on May 19, 1989, plaintiff alleged that the

invoices sent to defendant constituted a writing sufficient to invoke the 10-year statute of limitations under section 13—206 of the Limitations Act (Ill. Rev. Stat. 1989, ch. 110, par. 13—101 *et seq.*). According to plaintiff, although he relied on an account stated theory to establish the amount of the obligation, his case was based instead upon a written contract theory. The trial court, however, concluded that the invoices did not constitute a writing and the five-year statute of limitations period had run on the action.

On appeal, plaintiff contends that the invoices and monthly statements established either a written contract or "other evidence of indebtedness," to which a 10-year statute of limitations applied under section 13—206. Plaintiff maintains that the monthly statements created an account stated, which served to create successive new promises by defendant and to establish the amount of the obligation. As such, plaintiff maintains that even if a five-year limitations period applied, plaintiff was entitled to recover.

Plaintiff first contends that the invoices and monthly statements constituted either a written contract or "other evidence of indebtedness in writing," to which a 10-year statute of limitations applies. We conclude that the writings in this case do not constitute either a written contract or "other evidence of indebtedness."

■ Section 13—206 provides a 10-year statute of limitations period for actions on bonds, promissory notes, bills of exchange, written leases, written contracts or other evidence of indebtedness in writing. (Ill. Rev. Stat. 1989, ch. 110, par. 13—206.) Any action which is not otherwise provided for in the Code of Civil Procedure is governed by a five-year statute of limitations. Ill. Rev. Stat. 1989, ch. 110, par. 13—205.

■ Illinois courts strictly interpret the meaning of a written contract and "other evidence of indebtedness" within the statute of limitations. A contract is considered written for purposes of the statute of limitations if all essential terms are reduced to writing and can be ascertained from the instrument itself. (*Brown v. Goodman* (1986), 147 Ill. App. 3d 935, 498 N.E.2d 854; *Clark v. Western Union Telegraph Co.* (1986), 141 Ill. App. 3d 174, 490 N.E.2d 36.) If parol evidence is necessary to make the contract complete, then the contract must be treated as oral for purposes of the statute of limitations. *Clark v. Western Union Telegraph Co.* (1986), 141 Ill. App. 3d 174, 490 N.E.2d 36; *Weaver v. Watson* (1984), 130 Ill. App. 3d 563, 474 N.E.2d 759; *Novosk v. Reznick* (1944), 323 Ill. App. 544, 56 N.E.2d 318.

■ Similarly, a written document qualifies as "other evidence of

indebtedness" under section 13—206 only when one need not resort to parol evidence to establish the vital elements of the agreement. (*Schmidt v. Niedert* (1976), 45 Ill. App. 3d 9, 358 N.E.2d 1305.) The document must be of the same nature as those written instruments specified in section 13—206, although it need not follow the exact form and phraseology required in those documents. (*In re Estate of Garrett* (1975), 24 Ill. App. 3d 895, 322 N.E.2d 213.) Further, a writing constitutes "other evidence of indebtedness" when the language of the instrument may fairly be construed to contain a promise to pay money or contains facts from which the law implies a promise to pay, so long as parol evidence is not necessary to establish any essential elements. *Schmidt v. Kiely* (1977), 51 Ill. App. 3d 122, 366 N.E.2d 455.

In *Schmidt v. Kiely*, a doctor sued to collect an amount owed based on a billing statement. The patient's father had written "correct" on the statement next to the amount, had written "this will be paid in 90 days" on the back, and had signed and dated the statement. The court held that the document did not qualify as "other evidence of indebtedness" because it failed to indicate who was to pay the bill and the circumstances under which the debt had arisen. See also *Ames v. Crown Life Insurance Co.* (1980), 85 Ill. App. 3d 203, 406 N.E.2d 222 (written memoranda from insurance company requesting that certain forms be executed did not prove indebtedness). *Cf. In re Estate of Garrett* (1975), 24 Ill. App. 3d 895, 322 N.E.2d 213 (decedent's signed statement on promissory note that his son loaned him money to pay off the note and that son was to be repaid out of estate qualified as "other evidence of indebtedness").

In the present case, plaintiff claims that the written documents evidenced the parties' agreement. However, plaintiff cannot establish defendant's alleged promise to pay from the invoices, monthly statements or ledgers, taken either separately or as a whole. We can infer from the invoices that the parties entered various agreements for the purchase of automobile parts and supplies. Yet, none of the writings, not even the signed invoices, demonstrate any promise by defendant to pay. In fact, invoices or sales slips are routinely used for several purposes: to identify the sale and the articles sold, to identify the person making the sale, and to identify the person to whom the goods were delivered. The documents here merely acknowledge that defendant purchased supplies from plaintiff.

To even attempt to establish defendant's alleged promise to pay, plaintiff must introduce some parol evidence, whether it be plaintiff's rendering of statements to defendant, defendant's lack of objec-

tion or the prior dealings between the parties. As such, defendant's contractual obligation arises not from the written invoices, but rather from previously executed oral contracts. Since the documents failed to demonstrate a promise to pay, an essential element, the parties' agreement must be viewed as an oral contract. (*Wielander v. Henich* (1965), 64 Ill. App. 2d 228, 211 N.E.2d 775.) The *Wielander* court wrote, citing *Plumb v. Campbell* (1888), 129 Ill. 101, 18 N.E. 790:

> " 'A written contract is one, which, in all its terms, is in writing. A contract partly in writing and partly oral is, in legal effect, an oral contract.' [Citation.] 'If it be true that the agreement, as set forth in writing, is so indefinite as to necessitate resort to parol testimony to make it complete, the law is, that in applying the statute of limitations it must be treated as an oral contract. Both reason and authority support this view. [Citation.]' " *Wielander*, 64 Ill. App. 2d at 231, 211 N.E.2d at 776.

■ Basic contract theory also supports this result. Elementary rules of contract construction require us to find the parties' intentions from the written instrument itself. (*Continental Assurance Co. v. Commonwealth Edison Co.* (1990), 194 Ill. App. 3d 1085, 551 N.E.2d 1054.) Under this rule, we find nothing within the "four corners" to indicate that the parties intended these invoices to be anything more than mere receipts made for the parties' convenience and not intended as binding written promises to pay. Thus, in determining which statute of limitations applies, this contract must be deemed as oral. As such, section 13—205 applies, and the trial court properly found that the statute of limitations barred plaintiff's claim.

Next, we consider plaintiff's argument that the repeated rendering of statements of account tolled the statute of limitations. Plaintiff contends, relying on *Pure Torpedo Corp. v. Nation* (1945), 327 Ill. App. 28, 63 N.E.2d 600, that the last rendered statement of account on September 30, 1987, created an account stated and thus raised a new obligation between the parties so that this action is based not upon the original contract but upon the subsequent promise to pay inherent in an account stated. As such, plaintiff maintains that even a five-year statute of limitations would not bar this claim.

■ ■ Generally, an account stated is an agreement between parties who have previously conducted monetary transactions that the account representing the transactions between them is true, and that the balance is accurate, together with a promise to pay such balance. (*W.E. Erickson Construction Co. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 477 N.E.2d 513; *La Grange Metal Prod-*

*ucts v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 436 N.E.2d 645.) An account stated must demonstrate the mutual assent of both creditor and debtor. (*Allied Wire Products, Inc. v. Marketing Techniques, Inc.* (1981), 99 Ill. App. 3d 29, 424 N.E.2d 1288.) The meeting of the minds as to the accuracy of an account usually results from one party rendering a statement of account to which the other party acquiesces. (*Motive Parts Co. of America, Inc. v. Robinson* (1977), 53 Ill. App. 3d 935, 369 N.E.2d 119.) The manner of acquiescence is not critical, and the meeting of the minds may be inferred from the parties' conduct and the circumstances of the case. When one party renders a statement of account to another, who retains it without objection for longer than is reasonable, an account stated is established. *La Grange Metal Products,* 106 Ill. App. 3d 1046, 436 N.E.2d 645; *Protestant Hospital Builders Club v. Goedde* (1981), 98 Ill. App. 3d 1028, 424 N.E.2d 1302; *Motive Parts Co.,* 53 Ill. App. 3d 935, 369 N.E.2d 119.

■ Here, we do not believe that by rendering each of the successive statements of account, plaintiff created an account stated, and thereby raised a new cause of action or tolled the running of the statute of limitations. First, the monthly statements upon which plaintiff relies were not in the form of an account stated. The statement of account in question must be based upon previous transactions between the parties and renders certain the amount of a debt for a preexisting liability. (*W.E. Erickson Construction Co. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 477 N.E.2d 513; *Motive Parts Co.,* 53 Ill. App. 3d 935, 369 N.E.2d 119.) In this case, even assuming that an oral contract existed between the parties, the statements sent from 1980 through September 1987 did much more than clarify the amount defendant allegedly owed plaintiff for his preexisting liabilities. Rather, each successive statement added a monthly service charge to the account. Although the first statement following the last sale may have created an account stated, each successive statement had no such effect.

Furthermore, an account stated cannot be created merely by furnishing an account unless the creditor or debtor specifically intends to establish a balance due or to agree upon a final settlement to date between the parties. (1 Am. Jur. 2d *Accounts & Accounting* §21 (1962); 1 Ill. L. & Prac. *Account Stated* §2 (1968); *Chicago Truck Leasing Co. v. Gebhardt Chili Powder Co.* (1941), 310 Ill. App. 672, 35 N.E.2d 416 (abstract of opinion).) There is nothing in the record showing that plaintiff sent the statements for the purpose of clarifying a disparity as to the amount owed, nor is there any indication that between 1980

and 1987 defendant disputed plaintiff's claim as to the amount owed. In fact, both plaintiff and defendant agree that from 1981 until the filing of this suit, there were no conversations or dealings between the parties.

■■ ■ In our view, if an account stated was created at all, it was created only by the first statement rendered after the parties' last transaction on January 7, 1980. Thus, the initial statement that plaintiff sent after the final sale constituted an account stated and gave rise to a new cause of action, assuming it was received and retained by defendant without objection. (*Pure Torpedo Corp. v. Nation* (1945), 327 Ill. App. 28, 63 N.E.2d 600.) However, the subsequent statements were merely renditions of the account already rendered plus the added monthly interest, and, as such, did not create a new account stated each month. We do not believe that a creditor can extend the running of the statute of limitations on an account stated by merely repeatedly rendering the same account. (*Slayback v. Alexander* (1917), 179 A.D. 696, 167 N.Y.S. 194.) We find that when an open account becomes an account stated by virtue of the debtor's receipt without objection of a statement, the cause of action on the account stated accrues. Thus, plaintiff's cause of action on an account stated accrued during 1980 when plaintiff sent the first statement to defendant. Since an action not otherwise provided for in the Code of Civil Procedure is governed by a five-year statute of limitations (Ill. Rev. Stat. 1989, ch. 110, par. 13—205), plaintiff's claim was not timely.

■■■ Finally, we consider plaintiff's argument that because the writings in this case satisfy the requirement for a confirmatory memo under section 2—201 of the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 2—201), these writings are also sufficient under the statute of limitations. Plaintiff's argument, however, is unpersuasive. Section 2—201 provides the formal requirements for a contract for the sale of goods. The object of this statute of frauds provision is to ensure the existence of a valid contract and "to provide a basis for believing that the oral evidence rests on a real transaction." (Ill. Ann. Stat., ch. 26, par. 2—201, Uniform Commercial Code Comment, at 113-14 (Smith-Hurd 1963).) This section, in essence, is the statute of frauds which is applicable to the sale of goods between merchants. Contrary to plaintiff's contention, a writing that satisfies the statute of frauds requirements does not necessarily satisfy the statute of limitations definition of a written contract. *Brown v. Goodman* (1986), 147 Ill. App. 3d 935, 498 N.E.2d 854.

In *Brown v. Goodman*, in opposing a motion to dismiss on statute of limitations grounds, plaintiff cited several cases which considered

whether writings were sufficient to meet statute of frauds requirements. This court found those cases irrelevant. The court recognized that some jurisdictions treat a written instrument as a written contract for statute of limitations purposes if it meets the requirements for a written contract under the statute of frauds. However, the court stated that in Illinois, the test for whether a contract is written under the statute of limitations is not whether it meets the statute of frauds, but whether all essential terms of the contract could be ascertained from the written instrument. As such, neither the Uniform Commercial Code nor the statute of frauds supports plaintiff's position.

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing plaintiff's complaint is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.