2021 IL App (1st) 201003-U

FOURTH DIVISION
March 25, 2021

No. 1-20-1003

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| CHRISTINE DEMA, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19 L 14122 |
| CORINE O'HARA and SHUFLIT & O'HARA, | ) ) | |
| Defendants-Appellees. | ) ) | |
| | ) ) ) | Honorable James E. Snyder, Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Affirming the judgment of the circuit court of Cook County where plaintiff's lawsuit was properly dismissed pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2020)).

¶ 2     In December 2019, plaintiff Christine Dema filed a complaint for legal malpractice against defendants Corine O'Hara and Shuflit & O'Hara (collectively O'Hara) for alleged malpractice arising out of a divorce proceeding from January 2013.  O'Hara filed a motion to

dismiss in the circuit court, arguing that the statute of repose and statute of limitations barred plaintiff's cause of action. The circuit court granted O'Hara's motion to dismiss with prejudice.

¶ 3    Plaintiff now appeals, arguing that the circuit court erred in granting O'Hara's motion to dismiss because her complaint was timely filed, especially in light of O'Hara's fraudulent concealment. For the reasons which follow, we affirm the judgment of the circuit court.

¶ 4                                    BACKGROUND

¶ 5    Plaintiff filed her original legal malpractice complaint on December 20, 2019. Upon motion it was dismissed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)) on May 14, 2020, with leave to replead. Thereafter, plaintiff filed the operative amended complaint which alleged the following facts.

¶ 6    Plaintiff retained the services of O'Hara in a marriage dissolution proceeding around 2011. According to plaintiff, as the retainer agreement was not dated no exact date could be ascertained. Subsequently, the parties to the dissolution reached a marital settlement agreement. Plaintiff alleged she would only agree to the settlement if it allowed her to receive permanent maintenance. In advising her on the marital settlement agreement, plaintiff maintained that O'Hara repeatedly assured her that the maintenance would only terminate upon plaintiff's cohabitation with another person, death, or remarriage. Unbeknownst to plaintiff, the maintenance payment was based strictly on her former husband's employment status and not based on any other income. At no time did O'Hara advise her that if her former husband were to retire, she would lose all maintenance.

¶ 7    A judgment of dissolution was entered on January 9, 2013, which adopted the terms of the marital settlement agreement. A copy of the judgment of dissolution was attached as an exhibit to the complaint. Under the judgment of dissolution plaintiff was to receive permanent

maintenance of 23.5% of her former husband's "gross employment income." This maintenance would cease upon the death of either party, plaintiff's remarriage, or plaintiff's cohabitation with another person on a resident, continuing conjugal basis. Plaintiff was also awarded 50% of her former husband's retirement fund and she was "entitled to any increase in benefits allowed on her marital share of the Retirement Plan." The retirement benefits would commence when her former husband retired or when he began to receive the benefits, whichever date was earlier. Thereafter, a Qualified Illinois Domestic Relations Order (QILDRO) was entered on January 25, 2013.

¶ 8     Plaintiff further alleged that on July 17, 2013, O'Hara advised and assured her that she had to wait until her former husband retired to enter the QILDRO calculation order to begin receiving funds. In September 2013, O'Hara informed plaintiff that she was no longer practicing law and would not be entering the QILDRO calculation order and referred plaintiff to another attorney. Plaintiff's former husband retired in 2015 and plaintiff no longer received maintenance payments.[1]

¶ 9     In 2015, plaintiff contacted O'Hara, who advised her that the permanent maintenance clause in her marital settlement agreement was a "standard clause" and that the loss of employment was "always a risk."

¶ 10    On January 10, 2017, plaintiff called O'Hara relating to paperwork on the file and O'Hara indicated that she no longer had the paperwork. O'Hara further assured plaintiff that her maintenance was permanent, and she would get it.

¶ 11    In October 2017, the domestic relations court did not amend the QILDRO as requested

---

[1] Plaintiff did not allege a specific date in 2015 when her former husband retired or when she stopped receiving permanent maintenance.

by plaintiff.

¶ 12     On December 27, 2017, plaintiff consulted with another attorney and learned for the first time that she had a claim for legal malpractice against O'Hara.  Plaintiff alleged O'Hara fraudulently concealed her malpractice by assuring plaintiff that she should have permanent maintenance.  According to plaintiff, this assurance by O'Hara was made to plaintiff on numerous occasions, the last being on January 10, 2017.

¶ 13     O'Hara filed a motion to dismiss pursuant to sections 2-619(a)(5) and (a)(9) of the Code. O'Hara argued (1) plaintiff's claim is time-barred by the six-year repose period as provided in section 13-214.3(c) of the Code, (2) her claim is time-barred under the two-year limitations period as provided in section 13-214.3(b) of the Code because she reasonably should have known of her injury when she stopped receiving maintenance benefits after her former husband's retirement in 2015, but suit was not filed until December 2019, and (3) the allegations of fraudulent misrepresentation were not adequately pled and fail as a basis for tolling any repose or limitations period.

¶ 14     In response, plaintiff maintained the complaint was timely filed under the statute of repose due to the fact she last received negligent legal advice from O'Hara on January 10, 2017, therefore she had six years from that date to file the complaint.  Plaintiff further asserted that her claim was not barred under the two-year statute of limitations where, pursuant to the discovery rule, she did not discover O'Hara's legal malpractice until December 27, 2017, when she was informed by another attorney that she had a cause of action for legal malpractice.  In addition, plaintiff contended that the complaint was not time-barred due to O'Hara's fraudulent concealment.  Plaintiff acknowledged that she pled in the amended complaint that she was "putting her life in O'HARA's hands" and that she would only agree to the settlement if she

would receive permanent maintenance. According to plaintiff's amended complaint, O'Hara assured her that the marital settlement agreement would furnish plaintiff with all the benefits of her former husband's pension and that the terms were the very best possible solution to her property settlements, she would fare no better at trial, and there was nothing to worry about.

¶ 15    After the matter was fully briefed and argued, the circuit court entered a written order dismissing the complaint pursuant to section 2-619(a)(5). Specifically, the circuit court observed that plaintiff's injury, as pled, was that due to O'Hara's professional negligence she did not receive maintenance income after her former husband's retirement in 2015. The circuit court found that plaintiff knew or reasonably should have known of that injury at the time that income stopped in 2015, or, at the latest in October 2017 when the domestic relations court entered an adverse judgment. Accordingly, because the complaint was filed in December 2019, it was untimely under the two-year statute of limitations. The circuit court further found that six years had passed from the time the legal malpractice occurred when the judgment of dissolution was entered on January 9, 2013. Lastly, the circuit court found that the fraudulent concealment allegations were not well-pled as they were stated as conclusions. The court also noted that "[m]any of the conversations, to the extent to which they are plead [*sic*], appear to be years past Dema's engagement of other counsel and the domestic relations court's rejection of her modification request." This appeal followed.

¶ 16                                  ANALYSIS

¶ 17    Plaintiff contends on appeal that the circuit court erred in dismissing her amended complaint because it was timely filed under both the statute of repose and the statute of limitations and, regardless, O'Hara's fraudulent concealment acted to toll both the statute of repose and limitations and, therefore, her complaint was timely.

¶ 18                                         Standard of Review

¶ 19     O'Hara moved to dismiss the amended complaint under section 2-619(a)(5) of the Code. Our review of an order granting a motion to dismiss is *de novo*. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13; *Phelps v. Land of Lincoln Legal Assistance Foundation, Inc.*, 2016 IL App (5th) 150380, ¶ 11. Under *de novo* review, we perform the same analysis that a circuit court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Therefore, we may affirm for any basis that appears in the record. *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 638 (2008).

¶ 20     A motion to dismiss pursuant to section 2-619 (735 ILCS 5/2-619 (West 2020)) admits the legal sufficiency of the complaint, but asserts certain defects, defenses or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). Specifically, subsection (a)(5) of section 2-619 allows dismissal when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020). In ruling on a section 2-619 motion, all pleadings and supporting documents must be construed in a light most favorable to the nonmoving party, and the motion should be granted only where no material facts are in dispute and the defendant is entitled to dismissal as a matter of law. *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 176 (2011).

¶ 21                                         Statute of Repose

¶ 22     Section 13-214.3 provides that an action in tort or contract against an attorney arising out of an act or omission in the performance of professional services may not be commenced in any event more than six years after the date on which the act or omission occurred. 735 ILCS 5/13-214.3(b), (c) (West 2020). "[A] statute of repose begins running when a specific event occurs,

regardless of whether an action has accrued or whether any injury has resulted." *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001). The purpose of a statute of repose is "to terminate the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge of his or her cause of action." *Id.* Once the statute of repose has expired, the potential plaintiff no longer has a recognized right of action to redress any harm that has been done. *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93, 96 (2005). "Illinois courts have interpreted section 13-214.3(c) to provide that the repose period begins to run with the 'last act of representation upon which the malpractice is founded.' " *Id.* (quoting *O'Brien v. Scovil*, 332 Ill. App. 3d 1088, 1089 (2002)).

¶ 23    Here, O'Hara asserts that the statute of repose for plaintiff's legal malpractice action commenced in January 2013 (when the judgment of dissolution and QILDRO were entered), and the instant cause was untimely when filed on December 20, 2019. Plaintiff, however, maintains that the last act or omission occurred on January 10, 2017, when O'Hara assured her for the final time that she would receive permanent maintenance and that she had "nothing to worry about."

¶ 24    We agree with O'Hara that the last date of representation upon which the malpractice is founded was January 2013 when the judgment of dissolution and QILDRO were entered. See *Mauer v. Rubin*, 401 Ill. App. 3d 630, 642 (2010) (finding the harm to the plaintiff was done once the judgment of dissolution incorporating the allegedly defective marital settlement agreement was entered); *DeLuna v. Burciaga*, 223 Ill. 2d 49, 78 (2006) ("When, in the course of his or her professional dealings with a client, an attorney unnecessarily exposes a client to a risk of loss or otherwise jeopardizes the pecuniary interests of the client, the attorney has breached a duty to the client."). Plaintiff's legal malpractice complaint is based on alleged professional negligence in the representation of her during the dissolution of marriage proceedings. The

retainer agreement attached to the complaint describes the scope of the representation as being limited to obtaining the judgment of dissolution. Accordingly, we find the statute of repose in this case commenced in January 2013, and therefore the statute of repose ceased in January 2019—eleven months prior to when plaintiff filed her complaint.

¶ 25    To the extent that plaintiff argues that O'Hara's alleged continuing misrepresentations tolled the statute of repose, we observe that Illinois courts have consistently held that the statute of repose is not tolled merely by the continuation of the attorney-client relationship. See, *e.g.*, *Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 20; *Terra Foundation for American Art v. DLA Piper LLP (US)*, 2016 IL App (1st) 153285, ¶ 31; *Mauer*, 401 Ill. App. 3d at 640. Rather, " 'where there is a single overt act from which subsequent damages may flow, the statute [of repose] begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury.' " *Mauer*, 401 Ill. App. 3d at 642 (quoting *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 279 (2003)). Where here, the malpractice stemmed from the judgment of dissolution, it is apparent that the statute of repose commenced upon the entry of that judgment.

¶ 26                          Fraudulent Concealment

¶ 27    Plaintiff's main contention, however, is that O'Hara fraudulently concealed the legal malpractice cause of action where O'Hara continually assured plaintiff that she would receive permanent maintenance. Plaintiff maintains that because O'Hara last made such an assurance in January 2017, section 13-215 of the Code effectively extends the statute of repose and allows her an additional 5 years to file her complaint.

¶ 28    Section 13-215 of the Code states:

        "If a person liable to an action fraudulently conceals the cause of such action from the

knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2020).

Concealment is achieved through affirmative acts or representations "calculated to lull or induce a claimant" so that the filing of his claim is delayed, "or to prevent a claimant from discovering his claim." See *County Line Nurseries & Landscaping, Inc. v. Kenney*, 2020 IL App (1st) 200615, ¶ 27 (quoting *Barratt v. Goldberg*, 296 Ill. App. 3d 252, 257 (1998)).

¶ 29    If, however, at the time the plaintiff discovers the fraudulent concealment a reasonable time remains within the applicable statute of repose, section 13-215 does not toll the running of the repose period. *County Line Nurseries & Landscaping, Inc.*, 2020 IL App (1st) 200615, ¶ 28. This rule is logical because once a party discovers the fraud, it is no longer concealed, and if time remains within which to file the action, section 13-215 cannot operate to toll the repose period. *Morris v. Margulis*, 197 Ill. 2d 28, 38 (2001) (quoting *Muskat v. Sternberg*, 211 Ill. App. 3d 1052, 1061 (1991)).

¶ 30    In this regard, we find *Prospect Development, LLC v. Kreger*, 2016 IL App (1st) 150433, to be instructive. In that case, the plaintiff alleged that the Village of Prospect Heights breached a 1997 agreement for the construction of a sports arena. The deal fell apart by 2004, the plaintiff sued the Village of Prospect Heights in 2005, and in 2010, the circuit court entered a judgment against the plaintiff. *Id.* ¶¶ 2, 9-11. The plaintiff then sued its attorney in 2012 alleging legal malpractice that occurred between 1996 and 2001 relating to the project. *Id.* ¶ 12. In upholding the dismissal of the legal malpractice claims, the reviewing court found that the claims were barred by the statute of repose and that the repose period was not tolled by the fraudulent concealment exception in section 13-215. *Id.* ¶ 39. This was because the court found that the

plaintiffs discovered the legal malpractice claim while there was still a reasonable time left under the repose period. *Id.* Indeed, the plaintiff's own allegations stated it was aware that the legal advice it received in 2005 was not accurate and therefore the plaintiff was required to investigate further. *Id.* Thus, the plaintiff had over two years from January 2005 to file the legal malpractice action within the statute of repose, which "certainly qualifies as ample time." *Id.* Accordingly, the reviewing court affirmed the dismissal. *Id.* ¶ 40.

¶ 31    Even giving plaintiff the benefit of the doubt and utilizing the latest date she alleges she received actual knowledge of O'Hara's fraudulent concealment (December 27, 2017), 14 months remained within the statute of repose for plaintiff to file her legal malpractice action. Illinois courts will not apply fraudulent concealment to toll a statute of repose in a case where "the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, and a reasonable time remains within the remaining limitations period." *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862 (1987); *Serafin v. Seith*, 284 Ill. App. 3d 577, 590 (1996). Accordingly, where a plaintiff has been put on inquiry as to a defendant's fraudulent concealment within a reasonable time before the ending of the statute of repose, such that they should have discovered the fraud through ordinary diligence, they cannot later use fraudulent concealment as a shield in the event that they do not file suit within the statutory period. See *Prospect Development, LLC*, 2016 IL App (1st) 150433, ¶ 28.

¶ 32    We observe that plaintiff provides us with no case law or argument as to why 14 months is an insufficient amount of time in which to file this relatively straight-forward legal malpractice complaint. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires the appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." The failure to

develop an argument, cite persuasive and relevant authority, or present a well-reasoned argument violates Rule 341(h)(7) and results in forfeiture of that argument. *Doherty v. Country Faire Conversion, LLC*, 2020 IL App (1st) 192385, ¶ 36. In such a case as this, where the allegations of the complaint are straight forward and the plaintiff had not been receiving her permanent maintenance for over two years, we find 14 months was a sufficient amount of time in which plaintiff could have filed her legal malpractice complaint. Therefore, we find that her complaint filed on December 20, 2019, was untimely under the statute of repose. See *Butler v. Mayer, Brown & Platt*, 301 Ill. App. 3d 919, 926 (1998) (finding five months remaining was "ample" time).

¶ 33                              Statute of Limitations

¶ 34    Plaintiff next contends that her December 20, 2019, complaint was timely filed under the two-year statute of limitations (735 ILCS 5/13-214.3(b) (West 2020)) where she obtained knowledge of O'Hara's malpractice on December 27, 2017.

¶ 35    Because we hold that plaintiff's suit is time-barred under the statute of repose, we need not address the issue of whether the suit was untimely under the statute of limitations. See *Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 28 (where court declined to consider statute of limitations after finding the statute of repose barred the suit); *Terra Foundation for American Art*, 2016 IL App (1st) 153285, ¶ 54 (same).

¶ 36                        Leave to File Second Amended Complaint

¶ 37    Plaintiff also contends that the circuit court should have granted her leave to amend her complaint a second time. There is no absolute right to amend a pleading. *Butler v. Kent*, 275 Ill. App. 3d 217, 229 (1995). It is well established that the decision whether to allow an amendment to a complaint lies within the sound discretion of the trial court, and its discretion will not be

disturbed absent an abuse of that discretion. *Braun-Skiba, Ltd. v. La Salle National Bank*, 279 Ill. App. 3d 912, 921-22 (1996). We cannot say that the circuit court abused its discretion in failing to grant plaintiff leave to amend her complaint given the fact her claims are untimely, and an amendment would not cure that defect. See *Barratt*, 296 Ill. App. 3d at 259 (upholding the circuit court's decision denying the plaintiff leave to file a legal malpractice complaint); *Terra Foundation for American Art*, 2016 IL App (1st) 153285, ¶ 58.

¶ 38                                    CONCLUSION

¶ 39     For the reasons stated above, we affirm the judgment of the circuit court of Cook County finding plaintiff's legal malpractice cause of action to be untimely under both the statute of repose and the statute of limitations.

¶ 40     Affirmed.